2-22-0406 Laura Arteaga, plaintiff's attorney, v. Patrick Watson, defendant's attorney. Argument will be passed as an appeal. Mr. Michael A. Silverman. Argument will be passed as an appeal. Mr. Brett D. Blank. Thank you. Mr. Silverman, you may proceed. Thank you, Your Honor. If it may please this honorable court, this case is really a very simple, straightforward case for Your Honors. Laura Arteaga was involved in a car collision. She had some prior back pain before the collision. She underwent surgery for it. She was doing better. She then went to physical therapy where she did something that aggravated her back and leg pain. Then she was involved in a collision and had worse pain. And she then went from the scene by an ambulance to the hospital. She complained of worse pain in her back, down her leg. And that continued each and every visit she had with her surgeon after the collision up through March. Sorry, let me get to the exact date. Let me ask you this. The issue here is damages. That's the whole issue on appeal, correct? That is correct. This continued up through March 23, 2017. So the meds that were awarded by the jury, I don't have the amount right in front of me, but $30,000. $34,598. So you referenced that that's six months of treatment. Does that correlate exactly with that number? Because the 402 earnings, I mean, it adds up to a round number. So, I mean, can you specifically correlate the meds that were awarded to an exact figure, six months? So the figure is not exact. But if you look at the submission that I provided to this panel, the exact amount was $35,107 through March 23, 2017. So it's off by a few hundred dollars, it is off by. All right, so the 402 on earnings loss, do we have any correlation on how much time that was? Three days. All right, so that's a three-day figure. All right, so I'm sorry, go ahead. So this case comes down to really, I don't know how else to say it, so I'm just going to say it straightforward. Common sense. That's what this case is about. Can somebody who has pre-existing back pain, who then is involved in a collision, who has radiating pain down their leg, which every person who has testified in this case is consistent with an irritation of the nerve, for which she just had surgery, and which apparently there wasn't a complete decompression of the nerve, which then became aggravated from this collision, with worsened pain, how do you award six months of treatment for worse pain, which is what the jury did, and not award pain and suffering and loss of normal life for that same pain you just awarded medical treatment for? It defies logic. Well, the question would be then, and you brought it up, was it aggravated by the sex? That's the question for the jury, and that's the issue that you have when you get a case with pre-existing conditions, isn't it? It is. So my answer to you is this. The jury's verdict doesn't differentiate between whether it's an aggravation or a new injury. But the testimony in this case was clear, and there is no debate. There was a lumbar sprain strain at a very minimum. And the testimony universally is that it would last somewhere between four weeks and three months. So after three months, it is no longer possible to say it's a lumbar sprain strain, because every doctor who is qualified in this case to give opinions said those symptoms would resolve. Furthermore, there is testimony that a lumbar sprain strain is not consistent with causing shooting pain down the leg, because it's not irritating the nerve, it is affecting the muscles and ligaments and tendons. That's what a soft tissue injury is. Here, the clear testimony is after a certain period of time, the complaints are not consistent. So my long-winded answer to you, Your Honor, is this. It is clear there was a new injury based upon the testimony and an aggravation. But it's clear from the evidence and facts in the case that this woman had worse pain from the get-go. It was reported at the scene. She didn't get out of her car. She had to be taken out of her car by paramedics. That's the evidence the jury heard. And this radiating pain down the leg continued from the day of this collision through the end of March in a worsened condition. That's the evidence. Counsel, let me ask you, in the context of the case law that we have from our Supreme Court, it reversed the old per se rule that had, if you award meds for pain and suffering, you have to award some pain and suffering, right? The new rule as of 1996 under Snover is that the jury could, if, let's see, the evidence of injury is primarily subjective in nature and not accompanied by objective symptoms, then a jury could choose to disbelieve the pain and suffering and award no pain and suffering, even if meds are paid. And so the framework that we have is the evidence of injury when it is primarily subjective and not accompanied by objective symptoms. What was objective or, and the other context is where there's no contest, right? So there are other cases where the defense didn't really contest the fact of an injury, right? It was soft tissue, right? They would concede it was soft tissue. So in this case, is there either a concession that there was an injury from the accident, or were there objective findings that we can point to that would place you in that Snover framework? I'm going to answer your question, but I want to read you one thing first from Snover. We emphasize that in other cases, an award of medical expenses without a corresponding award for pain and suffering may be inappropriate. The court realized this has to be viewed case by case, and they've stated that. So the factual pattern in this case is completely different than Snover. So objective evidence in this case, absolutely. She already had radiating pain down her leg and in her back before this collision. The collision hadn't happened. So we know objectively this woman is having an issue with a nerve beforehand. That's objective. So there's no ability to make this up or be phony because she has it before. So we know there's some issue with the nerve. Then there's reports of it worsening. And again, Snover talked about objective evidence. Loss of motion of the neck. Worsening after the accident. Yes. So in Snover, the woman didn't have any preexisting condition that I'm aware of. She just had some issues that the court found. What they said was objective symptoms, interestingly, was range of motion issues. And I'm not sure how that's objective. To me, that's more subjective. But regardless, there is no question in this case that we have objective evidence. Because, number one, we've got this radiating pain. Number two, we have that she has lack of movement and motion. She's unable to walk 200 feet. She gets a handicap placard a month and a half after this incident. She's taking Norco every night after this collision starting on November 4th by the prescription of the doctor. She has increased pain with movement. She's got pain in the L5 distribution. Think about that for a moment. A nerve has a distribution that innervates a portion of your body. In order for it to be objective evidence, it has to be consistent or corroborate that nerve. Here, she has objective evidence that the L5 nerve is irritated because it goes down the left leg as she describes. Furthermore, there's an MRI on March 23rd, 2017, and she had one just days before the collision. And the defense's own expert says there's no change. So if there's no change, the March 23rd, 2017 MRI shows significant changes of wear at the L4, L5 level. And Dr. Ali testified he has never seen an acceleration of these kind of degenerative changes as quickly in his entire career between the September MRI and the March MRI as in this case. And his statement was that just doesn't happen without a trauma. So we've got a variety of specific objective evidence, lack of motion, lack of movement, pain radiating down the legs. So I hope I've answered your question with regard to objective evidence. Your Honor, there's a couple of last things I wanted to say. If the jury decided, so negligence was already found by the court. So the jury had to determine was she injured in this collision? Were her injuries proximately caused by the negligence of the defendant? The jury found those two things. They found she was injured. Whether it was an aggravation, whether it was a lumbar sprain strain, it's a red herring. It doesn't matter. All that matters is she had pain and symptoms. That's what the plaintiff has to prove. She has pain and symptoms. Couldn't they assume, and I think when you started this out, you said this case is about common sense. Well, that's kind of the risk you take when you go with the jury. But, I mean, couldn't the jurors have determined that she had all this pain and suffering prior to this accident? So why compensate her for pain and suffering when she had it anyway? The jury has to decide this case based upon the evidence. There was no evidence of all of these pain and problems. Well, she had the radiating pain down her leg prior to this accident. She did? She had that pain before. She had a surgery before. So, I mean, I'm just saying, how do we reverse the trial court, the fact finder, based upon abuse of discretion? Because the evidence wasn't supporting that she was in that state before the collision. It just doesn't. In fact, she was just about pain-free September 1st, which is a few months after the surgery, and the doctor said it would take about 6 to 12 weeks to get better following the surgery. Then she goes to physical therapy on September 2nd, and she has some aggravation. No doubt about it. But she's getting to physical therapy. She's driving. She's going there. There's no testimony of her missing work. There's no testimony of her not being able to walk. There's no testimony of her not being able to take care of her family or kids. None. Zero. What is the evidence after this? She can't walk. Her kids are taking care of her. She misses work. She's going to the doctor. The doctor says, stay home, take it easy, lay low. Norco. She's taking Norco now every night. She can't sleep. So when you ask that question, we either have to have the same standard in every case or we don't. And we do have the same standard. What is the evidence? The evidence doesn't exist before the case. The evidence exists after this case. And that is what a jury has to make their determination about. Otherwise, if they're not doing that, their verdict is without support and it's not consistent with the evidence. And that is impermissible. I don't know if there's any other questions, but that is the case. And in this situation, in this case, this case is stamped. This case is not Snover. And the Snover court, the Supreme Court in their infinite wisdom said, we can't ‑‑ it's not a cookie cutter. Not every person is the same. We can't decide this and say universally there's a line in the sand and every person in every case, if the jury says, no, there's not a worsening of their conditioning and they award nothing for pain and suffering and nothing loss of normal life, that stands. That's not what they did. And if you look at the facts of stamp, I know this court is familiar with stamp and I know you're familiar with Snover. This case is stamped. And, in fact, this case is way stronger than stamped. Because in this case, the plaintiff had a surgery before, months before, and she had pain before. That did not exist in stamp. So you clearly have an individual who was, going back to my law school days, was an eggshell plaintiff. So in stamp, the court did say that there was soft tissue injury that the defense expert had agreed existed. They were just talking about, you know, extent in causation. But, well, no, I think causation even wasn't part of it. It says uncontroverted evidence was that she suffered a soft tissue injury. So they did have, you know, indications that it was partially based on subjective reporting of pain in the time period immediately after. There was loss of sensation and then the range of motion that you had mentioned. But the stamp court seemed to put some emphasis on the uncontroverted nature. What do you have to say about that? And was there any evidence here? Did the defense concede that there was any injury whatsoever from this? Or did they contest even the fact of the most minor soft tissue? You are correct with your analysis of stamp that the defense expert, Dr. Russell Glantz, said that I'm giving her the benefit of the doubt. She could have pain up to six months. And that was basically an uncontested fact. In this case, the testimony of the defense expert, Frank Phillips, Dr. Frank Phillips, was two to three months with a lumbar sprain strain. So, you know, and I know the defense argues in their motion, in their response, excuse me, that there's no identifiable injury. And so the jury could have said, no, we don't know what injury. Their own experts said she had a lumbar sprain strain and it would be for two to three months. So to answer your question, Your Honor, it is uncontested. And the clear evidence in this case from every doctor is at a minimum, there's a lumbar sprain strain for a minimum of three months. And going back to the Stanford case, the jury cannot disregard that testimony. That is not improbable. It is universal by everybody and it is not in dispute. They can't disregard it. And they didn't. They found, in fact, her pain complaints were longer than that and they awarded six months, not three months, which demonstrates they believed this wasn't just a sprain strain. Because there's no testimony that a sprain strain would last longer than three months. That was all of the testimony in the case. The testimony to explain what was going beyond three months was this is no longer just a sprain strain. This is now something more. And this is a ridiculopathy. And that is consistent with the evidence and testimony of Dr. Ali in this case, where he specifically said 99% of patients would be getting better with a lumbar sprain strain in that window of that four weeks to three months. And once she passes that threshold, this is not just a sprain strain because that is not consistent with medicine. That's when muscles get better. Nothing further. I have nothing further. Thank you. Thank you. I'm sorry. I'll clarify. Absolutely. Are you saying that the jury should have awarded at least three months of pain and suffering and they didn't? Or are you saying that they should have awarded more than six months because of what your doctor said? I am saying the jury, to be consistent, should have awarded six months' worth of pain and suffering and loss of normal life because that is the finding of the jury based upon their award in this case. The medical expenses. Exactly. The medical expenses. So if they found that, then they should be consistent in their loss of normal life and pain and suffering with that six-month window. Okay. Do I have an opportunity to make a public statement? Thank you. Mr. Glenn, you may proceed. Thank you, Your Honor. If I may, please. I'm sorry. Thank you, Your Honor. If I may please the Court. This is a jury verdict that is 100 percent correct. It must be affirmed. How can it be correct if we take the argument of Mr. Sussman that you have medical expenses? They compensate her for medical expenses. Correct. So they're really thinking, okay, this accident, these medical expenses incurred were as a result of this accident, correct? Correct. And then, but there was no pain and suffering as a result of this accident. Correct. Tell us how. This represents perfect public policy because if someone's involved in an accident such as this, a little minor tap-render accident, a person with a condition such as the plaintiff in this case should have a right to go to a hospital and seek treatment to find out if any further injury was sustained. And that's what those medical expenses were for. However, the plaintiff did not establish that this accident caused any pain, suffering, or normal life. In fact, the evidence shows that this accident, I'm sorry, prior to the accident, she injures her back in physical therapy on September 8th to such an extent that on September 22nd, her doctor orders an MRI. If this was not, if Ms. Ortega was not in such pain or had such problems, the doctor would not award that MRI on September 22nd. Then we have the accident, September 28th. Then we have the next MRI, November 10th, 2016. Both the September 22nd MRI and the November 10th MRI are exactly the same. No change whatsoever. No, there's a new injury. With respect to that, don't we have to honor the jury's determination that what you're saying is not what they found, that they found that there was an injury that was compensable by paying medical bills and lost wages. So here we have an element that some of the other cases don't have. So, I mean, to me, I keep going back to Snover. Snover tells us if there is objective symptoms, the jury is not free to disregard, or if there is some uncontested nature to the injury. So counsel has said that it was uncontested because the medical experts agreed to lumbar strain that would take a certain period of time, and they also pointed to objective symptoms. So I want you to address those two issues. Yes, of course, Your Honor. In this case, there was no evidence at the point to sustain an objective injury as a result of the incurrence. What about the fact that she was taking Norcon or whatever it was called? Well, the jury is clear to find that she was taking a medical pain medication due to her preexisting degenerative conditions in her lumbar spine, that the experts and the doctors testified were due to the degenerative condition of her spine, were due to the fact that she has diabetes, and due to the fact that she has wear and tear. In fact, the plaintiff's own expert witness, Dr. Negrish, testified that the need for the plaintiff to have the further surgery in July of 2017 was from an inadequate decompression originally done by Dr. Ali. And Dr. Ali testified, and was impeached during the trial, that during his original deposition, he had no opinion whatsoever of what type of injury the plaintiff had sustained as a result of this accident or the need for the July 17th, sorry, July 2017 surgery. And furthermore, a defense expert witness did not testify that the plaintiff sustained a strain of the neck. Dr. Phillips, the defense expert witness testified, Dr. Ali said that the plaintiff had a strain or a sprain of the neck, which would resolve in about three months. Defense contention the whole time is no injury was sustained as a result of this accident. However, we did tell the jury to award the plaintiff medical expenses related to the first treatment following the accident, because people have a right to be checked out following an accident. That's good public policy. But with all these other things going on, the jury was free to conclude that the plaintiff did not prove that she had pain, suffering, loss of normal life as a result of this occurrence. She had this before the occurrence. She had this after the occurrence. Right. So it was contested, so it's not uncontroverted. So that, you're saying, takes us out of that category. But now we're looking at objectives. So counsel pointed to an MRI that Dr. Ali had stated showed accelerated degeneration of the L4, L5, and that that was only something that you would see in cases of trauma. So he's pointing to that as objective. He's pointing to the medication, the pain that continued as being reported, and the nerve distribution, which corroborates. So what do you have to say to those assertions of objective symptoms? Yes, Your Honor, absolutely. The MRI we're talking about is from March of 2017. That's well after the accident in question. And doctors testified that the continuation of the plaintiff's degeneration of this disease was due to her hereditary nature, was due to wear and tear, was due to her diabetes. For the objectiveness here, the jury only has to look at the first two MRIs, the one before the accident, the one after the accident. No change whatsoever in the MRI. Therefore, as the plaintiff goes into March of 2017, the continuation of the plaintiff's degenerative spine is just because of the degenerative nature and the problems that the plaintiff has with her spine. And that's not related to the accident. That goes all the way back before June 13, 2016, when she had the first lumbar surgery in her spine. I believe that the doctors or the plaintiff testified she first began treating sometime in like March of 2016, somewhere around that period of time. Further evidence of no objective injury is the plaintiff was treated in an emergency room immediately following the accident. She was treated and released. She goes back to Dr. Ali on September 29th of 2016 and treats with him again. He just simply tells her to take it easy. Then, from September 29th of 2016, she was in follow-up medical treatment until October 20th, 2016. If she was seriously injured as a result of the September 28th accident, she's having such a long gap in period of treatment before she goes back and starts treating with Dr. Ali again. And the plaintiff's position is that the jury found in their favor on all of this, and they awarded the medical bills for it. What they're saying is that they can't ignore pain and suffering because of objective symptoms. And so the things they pointed to, you've addressed the MRI. What about the nerve distribution corroborating the complaints of pain? That's well after the accident question, caught in the March of 2017 judge. The jury in this case found, correct, by all the objective evidence presented, that they could not connect any pain and suffering, a result of normal life, to this minor auto accident. The plaintiff had these problems before and after, and simply the jury did not believe her. That is the right of the jury, not to believe what was testified. That's what the jury has, the right to believe or not believe any witnesses and to believe and choose the evidence they want to believe. There was no objective evidence that the plaintiff was injured as a result of this occurrence. It's the objective. It's what the jury believed. And they have the right to make their determination as to the credibility of the witnesses because they are there as the trier of fact. And they got this case 100 percent correct, the defense believes. There was a motion for a new trial, was there not? There was, and Judge Crenshaw... And did the judge rule? The judge denied the motion for a new trial, finding that the court did not use its discretion and by the manifest weight of the evidence that the jury verdict was correct. Were the arguments by Mr. Silberman made to the trial court during that motion? Generally, what we both stopped up on the motion is my recollection is that Judge Krentz read the briefs extensively. There was not a great amount of oral argument provided. Judge Krentz made his ruling and decision from the bench, and that's in the record. Counsel, what about the argument that the amount of the medical damages correlates with the time period? Do you agree or disagree with that? I disagree with that. The jury was not given the medical expenses or records to review. The jury looked at a stipulation between the parties. The medical expenses were contested by both sides. They claim it's $34,594. We allege, with our expert witnesses, and it's written in our brief, that it's somewhere around $26,000. It's really hard to tell exactly what the jury looked at and what they decided was a fair amount of medical expenses. It's only given the plaintiff the right to be checked out because it's not equal to what is actually shown in the stipulation. Well, there are dates on the stip. Correct. So have you done the math to see if it does correlate with any? I've done the math before. I didn't believe that they correlated. I think they were a few thousand dollars apart, as my recollection was. Well, Mr. Silverman pointed out that she wasn't walking after the accident, whereas she was before. She missed work. She had to have her kids come and take care of her. She took the morgue go after this accident. These were all things that weren't present before the accident. Isn't that inconsistent with what the jury found? No, because that's really not what the jury heard. The jury heard that the plaintiff missed three days of work. After that, she was driving. She was going to work full-time. She was walking. In fact, the plaintiff's testimony concerning her kids and her family, this accident and the pain itself causing the divorce, was just a ruse. It simply did not cause the plaintiff to not be able to walk, to not be able to go to work. She had pain and suffering before the accident. Was there an IME or any allegation of malingering by the defense experts? No. We did not have an independent medical examination performed on the plaintiff. All right. So Dr. Phillips has examined medical records. Examined medical records and MRIs. And most of the testimony concerning the trial came from her own treating surgeon, Dr. Ali. And the plaintiff testified herself that she didn't really understand what Dr. Ali told her what her condition is or why she needed these surgeries or what the cause of her condition was. A lot of the testimony from the plaintiff was, I do not know, I do not remember. She was not a great witness, and that's another reason why the jury did not buy into her story. And the fact that she couldn't go to football games or baseball games, there's no time frame connected to this whatsoever. She could drive a car. She could go to work. Certainly, those two things had she chosen, she could have went to a child's football game or basketball games. It just was not connected. And there was no testimony from the family whatsoever. In fact, the testimony was the children now live with the husband. That's all. But the jury just didn't buy it. Well, and yet they bought $30,000 worth of medical bills. That's the jury being fair. We made our evidence of a closing statement. If the plaintiff has a right to be checked out, I recommended that she get the bills from Rush Coakley Medical Center. Everyone's got a right to be checked out after an accident, especially if you have a preexisting condition. So the jury followed my advice. And as I said, if you think there's more, that's your property. That's the right of the jury. I mean, does the ER bill correlate to that $30,000? It does not. The ER bill is $13,000. Right. So whatever they awarded extended beyond. Correct. But then we also had the reduction in the medical bills by the expert witness billing provider, Mary Rossi, which is covered in our brief extensively. The jury looked at the medical expenses and, well, I don't know. What can we believe here? What can we not believe here? Because there's some big, big errors in the charges provided. Right. I mean, the total amount presented is $327. Correct. So, yeah, I know the billing expert had analysis, right? There was some double billing. There was some phantom charges. I understand that. Right. There was some accidental double billing. There was some incorrect billing codes put in. No one's accused of any fraudulent billing or anything like that. Mistakes happen. And the jury was enlightened to hear about medical billing and how mistakes happen, and they got a good impression as to, like, why medical bills seem to be so high.  If you believe there's three months, six months, here's the figure for that, here's the figure for none at all. There was none of that. Ms. Rossi did not testify as to any medical records, pain, suffering, or any time periods like that. She just objectively looked at the bills and made her opinions directly based on the bill and correct billing procedures. Any questions? No, thank you. No. Am I correct in thinking that your argument, in part at least, was that the objective evidence of the MRIs indicated that before and after there was no change? Correct, Your Honor. And what would that extrapolate out to? I'm sorry. Based upon that premise, what would your syllogism be? It would be that there was no objective evidence that the plaintiff sustained an injury as a result of this minor auto accident. Any other questions? None. Thank you. Thank you. Thank you, Your Honor. Mr. Silverman, you may proceed. You have five minutes for rebuttal. I'm going to start by saying whether the jury's verdict was supported by the evidence, that's the issue for an abuse of discretion standard. Secondly, this Court can overrule the jury verdict if the jury ignored a proven element of damages, the verdict was from passion or prejudice, or the award bore no reasonable relationship to the loss sustained. I would argue points one and three apply here. I want to address the statements that counsel made. I'm going to start with the last statement with regards to the medical bills. I provided this honorable panel a list of the medical treatments in order with amounts. The defense's argument makes absolutely no sense because I used the full amounts for this treatment for the six months. If, first of all, Ms. Rossi did not attack this time period at issue, but regardless of that, if you say that these are not the correct amounts and that the amounts should be less, if the jury awarded $34,598 and they reduced these bills for the first six months, all that would do would be extend the time that the jury determined was related to the case. If there's $34,500 in bills for the first six months, and taking the defense's argument that the amount should have been $10,000 less, well, that's $24,000. The jury came up with $34,000 a change. That means they had to determine more treatment is related to come to that number. So their argument makes absolutely no sense and in fact shoots them in the foot with regards to how long the injuries are related to the case. With regards to the testimony of Laura, counsel said that I had it wrong. I will send to you the testimony of Laura before versus after. It's in the record. She testified after the incident she was waking up each night because of pain. That's page R37. She testified she started taking painkillers to sleep, R37. The records of Dr. Ali corroborate this. She testified she needed a handicap placard because she was having a hard time walking after the collision, R38. She testified she needed a walker because of her pain, R47. In January 2017, she said she was in such pain that she went to the doctor. He recommended an injection. That's the first time she got an injection after the surgery, but it was after the car collision. That's R40, and it didn't help. She had such terrible pain it was shooting in her leg. That's R38. With regards to the time period that counsel said that she didn't testify that she was having problems with going to sporting events, she said she missed out on going to her son's football games in the fall of 2016. This accident happened September 28. The fall was right then. In the fall of 2016, she missed her son's football games and her daughter's basketball games in the fall and winter of 2016. That's R49.50. She testified she could not walk up into the bleachers and could not sit in the bleachers to watch the games. That's on page R50. These are all changes after the collision. Respectfully, counsel has it wrong. With regards to Dr. Phillips, in my submission on page 12, Dr. Phillips testified via video evidence deposition that he believed Laura sustained a lumbar spring strain from the motor vehicle collision. Counsel said he didn't say that. It could take two to three months to heal, but in 90% of people, it resolves by three months. That's page C389. Dr. Phillips confirmed that prior to September 28, 2016, the car collision, Laura, according to the records, was doing well following her surgery in June of 2016. That's page C392.93. He also confirmed that following the motor vehicle collision, Laura presented with Dr. Ali with back pain and received a prescription for narcotic pain medications that are used for patients experiencing pain. Contrary to what he said, she was not getting narco before the collision. That's page 398. Furthermore, that is exactly what's in the records of Dr. Ali, that he prescribed these medications after the collision, not before. So I wanted to clear that up in rebuttal, that counsel's statements, respectfully, are not correct. And what I said to this panel is correct, and it's supported by the record in the pages I gave you. Is he correct in saying that there was no change in the MRI prior to and subsequent to? That is what Dr. Phillips said. Dr. Negrish, my expert, and Dr. Ali said, no, that is not correct. Because when you compare, counsel was comparing the MRI on September 22nd to the one on November 10th, that did not demonstrate a significant change or a traumatic change. But by March, that MRI showed a significant change where Dr. Ali said, I have never seen this type of change in my entire career. And the only thing I can attribute it to was a car collision. And Dr. Negrish also said that there were problems at the L4, L5 level on that MRI and the November MRI. But he was my retained expert, so I want to use what Dr. Ali said for this panel, that there was a significant change in the March MRI versus the one before the car collision. What could the trial court misapprehend on your motion for a new trial? I think Judge Krenz is an excellent trial judge. I would try a case before him tomorrow without any hesitation. I think Judge Krenz's statement, I can't read his mind, but my sense is that he was apprehensive to overturn the jury verdict. In his transcript, which you have in the record, he says at the end of his ruling, I look forward to the decision from my brothers and sisters in Elgin once this case is taken. He knew it was going to be taken up for appeal, but his opinion, respectfully, it just didn't logically follow. It's on page 17 of my brief, and I wrote, the court stated that the plaintiff sustained an injury from the collision or an aggravation, but the jury could find that it didn't increase her pain. The plaintiff had, I'm quoting him, the plaintiff had preexisting and ongoing degenerative disc disease, and that she did receive significant medical treatment for that prior to and also subsequent to the accident in question for the preexisting condition. And, quote, the jury could have elected to disbelieve plaintiff's claim entirely that she suffered any pain or loss of a normal life, or alternatively, even if they did find she experienced those damages, end of quote, it is, quote again, not reasonable at least for them to attribute that to preexisting conditions. Judge Krentz was focusing solely on preexisting conditions. As probably was the jury, correct? I believe they probably were, Your Honor, and that's understandable to some degree, but it doesn't explain everything. If you are awarding money for an aggravation of a preexisting condition, 3021 jury instruction, you may not limit or deny the plaintiff's recovery because there was an aggravation or exacerbation of a preexisting condition. If the jury is finding medical treatment for an exacerbation that caused her pain to be worse, I say to this panel it is illogical. It does not follow to award medical bills for the increased pain and zero for the increased pain. It doesn't follow. That's why this verdict is inconsistent, and the jury ignored a proven element of damages in this case. I respect Judge Krentz. I disagree with him. I think his focus was too narrow, and furthermore, I believe he didn't follow the logic that I was saying to him, and maybe he didn't just ignore it. I don't know. I can't read his mind, but the bottom line is, again, I'm sorry I lost time to be redundant. It is illogical to say someone had an aggravation of their preexisting condition and award six months of treatment for it and then say I'm not going to award you anything for that increased pain. When it has to follow if you're awarding the treatment for the increased pain. But you're assuming that the jurors said there was an aggravation because they gave medical. That doesn't mean that they agree there was an aggravation. That means that they're going to compensate her for the medical expenses she incurred as a result of the accident. In other words, if she were just sitting at home on her couch, she wouldn't have been rear-ended, and therefore she wouldn't have had to go to the hospital and incur these medical expenses. So I don't think, I mean, from what I'm gathering is incurring medical expenses does not equal an exacerbation of pain. I agree with you. It doesn't absolutely follow. But remember, we have two things that I've presented to this panel. We have an aggravation and or a new injury. I see. The evidence in the case is un-contradicted that there was a lumbar spring strain contrary to what counsel is saying. His expert did say that. And that would be two to three months. That is not a dispute from the evidence. Then after three months, what can explain this ongoing pain that the jury is awarding medical treatment for? If the lumbar spring strain has resolved under medical logic, why does she still have this increased pain that the jury is awarding her treatment for? They said it was from the collision. And again, while it may, your logic I agree with, Your Honor, if somebody is just involved in a car collision and they go to a hospital or a doctor, there could be no pain. They just may want to be checked out. And there's case law that says that. That makes perfect sense. But she had this ongoing pain before and it got worse. That is the evidence. Wait a minute again. It's objective, subjective. So if it is uncontroverted, as you say, then automatically the jury is unable to disregard pain and suffering. And it goes back. That's what Stover tells us, if it's uncontroverted. Or if there are objective findings, and most of what you have emphasized here are subjective pain complaints, which, again, doctors, I understand, have to rely upon statements. There are going to be very few objective symptoms of pain without, you know, a structural change and soft tissue injuries involve that very conundrum all the time. But again, the objective aspect is not what the plaintiff says. It is what is observable otherwise. And you keep referring to her complaints of pain, but what are you saying is actually observable beyond her own statement? I'm saying to you it's twofold. It's not only the plaintiff's subjective complaints. It's that plus the exam and that the complaints are corroborated by the doctors. In this case, she had back pain and pain that was shooting down her leg. She had an MRI that showed she had issues at L4, L5 on the left side. Her complaints were consistent with the objective findings on the MRI to explain her pain complaints. So, in other words, when a doctor does a surgery, there has to be something that he thinks he can fix. And he has to rely on what the patient is telling him and what he is seeing on exam and on imaging. Otherwise, he can't do surgery because he can't fix the problem. Here, we know there was something going on because she had a prior surgery at L4, L5. She had an issue with the left side only initially going down the leg, which is consistent with that nerve irritation. And we know that her complaints after this collision were substantiated by the MRIs. And then the doctor did surgery again, which the jury said is not related. And I respect that. And I'm not saying it is. But the doctor then did the surgery at that same level to resolve issues. So you have a variety of issues that demonstrate an objective finding that the doctor is doing surgery for. And furthermore, you have the testimony of Dr. Negrish, who also confirmed that there was objective findings from the MRIs. Did we just change from objective facts to objective findings? Well, I don't know about if it changed. Objective findings is something that you can see on, let's say, an MRI. That's an objective finding, I would say. An objective fact may be an examination. It's not called an objective symptom. I'm not sure that's a distinction or the difference. And I don't know if there is such a thing as an objective symptom. You said that it's either an aggravation or a new injury. Or both, which I believe is both. If it's a new injury, why are the MRIs the same? He's saying they're not. Well, first of all, the doctors have testified that there was a worsening in March in the March MRI versus the one before the car collision. So there was a difference according to Dr. Ali. I agree. Dr. Ali said there was no changes that he could see between the one right before the collision and the one in November. Dr. Negrish said there was a difference in the November one and the March one compared to before the car collision. So he said there's a difference in both. But the last thing I want to say to address that is, you know, there does not have to be a change. We are talking about a nerve that passes through a foramen, which is tiny, millimeters. And to say that an MRI or science can pick that up, it doesn't always pick these things up. It's like saying somebody has a headache, my wife has migraines all the time, and every MRI and CAT scan comes back normal. I have stomach issues. Every examination of my stomach comes back normal. I can't explain it, but the bottom line is I have it. Testing does not automatically, is not the be-all, end-all. It doesn't demonstrate that somebody doesn't have a condition. It can help to corroborate a condition or a complaint. And I think that's a really important distinction to make. We cannot say MRIs and no doctor will testify in this case or in any case that an MRI is 100 percent foolproof. In fact, I just did a deposition two days ago where the expert said the MRI showed a foolproof and I did not show it, and I saw it on the You've certainly kind of gone far beyond the point, at least that I thought was relevant. I apologize. How does the plaintiff's experts rationalize or explain that the later MRI was caused by or couldn't have been caused by degeneration. It had to be caused by something else. How does that objective exclusion of degeneration come about? I can only tell you the testimony of Dr. Ali. Dr. Ali testified in his career he has never seen such rapid, accelerated degeneration in his entire career absent of trauma. And I think we have to put some stock in that. The degeneration he testified is a process that occurs over time. And here we have such a rapid change according to him, and he's the treating physician and he's seeing this, that he said, I've never seen it in my career. I'm not the trial effect. Any other questions? None. Thank you. Thank you. I think your time is up. We'll take the case under advisement. Court is adjourned.